# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GLORIA RIGHTSELL Personal Representative of the Estate of Glenn Rightsell, <br> GLENN RIGHTSELL Deceased, <br><br> Plaintiffs, <br><br> v. <br><br> INDIANA STATE POLICE, <br> DANIEL ORGAN Trooper, in his Individual and Official Capacity, <br> MONTGOMERY COUNTY SHERIFF'S DEPARTMENT, <br> MIKE TAYLOR Deputy, in his Individual and Official Capacity, <br> AUSTIN THOMEN Deputy, in his Individual and Official Capacity, <br> CITY OF CRAWFORDSVILLE, <br> RICK FERRIN Officer, in his Individual and Official Capacity, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 1:19-cv-04927-TWP-DML |

## ENTRY ON STATE DEFENDANTS' PARTIAL MOTION TO DISMISS

This matter is before the Court on the State Defendants' Partial Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Superintendent Douglas Carter ("Supt. Carter"), Trooper Daniel Organ ("Trooper Organ"), Lieutenant Thomas W. McKee ("Lt. McKee"), and Sergeant Randy L. Gritten ("Sgt. Gritten"), all of whom are from the Indiana State Police and are sued in their individual capacities (collectively, "Defendants") (Filing No. 88). This action was initiated by Plaintiff Gloria Rightsell as the Personal Representative of the Estate of Glenn Rightsell,( "the Estate"), and Glenn Rightsell, Deceased ("Mr. Rightsell"). The Estate alleges that the Defendants violated Mr. Rightsell's constitutional rights under the Second, Fourth,

and Fourteenth Amendments and for negligence (Filing No. 64-1 at 7–14, 15–16). For the following reasons, the Court **grants** the Motion.

## I. BACKGROUND

The following facts are not necessarily objectively true, but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all inferences in favor of the Estate as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

At around 3:30 p.m. on December 28, 2018, Trooper Organ placed an abandoned vehicle tag on a disabled 2007 Chevrolet Tahoe that he saw sitting on the side of U.S. 231 in Montgomery County, Indiana (Filing No. 64-1 at 5). The Tahoe belonged to the stepdaughter of Glenn Rightsell ("Mr. Rightsell"), who called the Montgomery County Sheriff's Office shortly after Trooper Organ tagged the vehicle to request that it not be towed as he intended to repair it promptly. *Id.* A few hours later, at around 6:30 p.m., Mr. Rightsell arrived at the vehicle and started to replace a heater hose. *Id.* Shortly thereafter, Trooper Organ returned to the scene, parked his patrol vehicle behind the Tahoe, and approached. *Id.* Mr. Rightsell, who was leaning into the engine compartment at the time, had a properly permitted handgun holstered at his waist. *Id.* Just as he looked up from his work, Trooper Organ opened fire, shooting six times and hitting Mr. Rightsell in the lower lip. *Id.* Trooper Organ then—without administering aid to Mr. Rightsell—walked to his vehicle, reloaded his handgun, retrieved a rifle, and waited for additional officers to arrive after he reported "shots fired." *Id.*

For ten to fifteen minutes, Mr. Rightsell continued bleeding on the ground in front of the Tahoe before he was ordered to crawl on his knees, with his hands in the air, to a group of police officers who had since arrived. *Id.* at 6. Mr. Rightsell's handgun remained holstered until he was handcuffed and disarmed by officers at around 6:45 p.m. *Id.* Then, Mr. Rightsell was forced to sit

handcuffed on a guardrail before EMS personnel provided medical treatment, roughly twenty to thirty minutes after the shooting. *Id.* A few hours later, around 8:45 p.m., Mr. Rightsell tragically died at a local health care facility from the gunshot wounds Trooper Organ inflicted. *Id.*

Before the shooting and killing Mr. Rightsell, Trooper Organ, who had just recently graduated from the Indiana Law Enforcement Academy, was the subject of multiple formal citizen complaints due to his conduct. *Id.* at 9. Specifically, individuals complained that Trooper Organ had unnecessarily threatened them with lethal force, had gratuitously pointed his firearm at them, had (even during routine stops) groundlessly approached their vehicles with his gun drawn, and had needlessly detained them. *Id.* At that time, Lt. McKee and Sgt. Gritten, who were Trooper Organ's supervisors, knew about the citizen complaints but failed to train, supervise, or otherwise address Trooper Organ's conduct. *Id.* at 9–11.

The Estate, initiated this action in December 2019 (*see* [Filing No. 1](#) (Complaint); [Filing No. 5](#) (First Amended Complaint, filed the same day)). In September 2020, the Estate moved for leave to amend the complaint a second time after discovery revealed additional potential claims (*see* [Filing No. 64](#)). Though Defendants objected (*see* [Filing No. 65](#)), the Court granted the request and accepted the Second Amended Complaint ([Filing No. 64-1](#)), mooting an earlier Motion to Dismiss (*see* [Filing No. 69 at 5](#)). Defendants now partially move to dismiss under Federal Rule of Civil Procedure 12(b)(6) ([Filing No. 88](#)).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633.

3

Courts, however, "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III. **DISCUSSION**

The Estate's primary claim consists of a Fourth Amendment excessive force claim against Trooper Organ for the shooting and resulting death of Mr. Rightsell, as well as additional claims against the remaining Defendants – under both federal law and state law. Pertinent here, the Second Amended Complaint asserts claims against the Defendants for "violation of [Mr.] Rightsell's constitutional rights" for "careless and negligent actions" ([Filing No. 64-1 at 7](#)–14, 15–17). The Defendants' Supt. Carter, Trooper Organ, Lt. McKee, and Sgt. Gritten, seek dismissal of certain Constitutional Claims and the negligence claim.

A.  **Constitutional Claims**

The Estate asserts claims against the Defendants for violations of Mr. Rightsell's Second, Fourth, and Fourteenth Amendment rights (*see* [Filing No. 64-1 at 7](#)–8, 11, 13). In response, Defendants contend that (1) claims arising under the Second and Fourteenth Amendments fail and (2) all constitutional claims against Supt. Carter, Lt. McKee, and Sgt. Gritten should be dismissed (*see* [Filing No. 89 at 4](#)–10). The Court will address these two arguments in turn.

1.  **Claims arising under the Second and Fourteenth Amendments**

The Second Amended Complaint alleges the Defendants deprived Mr. Rightsell of his Fourteenth and Second Amendment rights (in addition to his Fourth Amendment rights, discussed below) (*see* [Filing No. 64-1 at 7](#)–8, 11, 13). In response, the Defendants, while also incorporating arguments proffered in support of a prior, mooted motion to dismiss, contend that "an excessive force claim in the context of an investigatory stop invokes the protections afforded by the Fourth Amendment, not the Fourteenth." ([Filing No. 89 at 5](#) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Defendants contend the Estate "does not posit any cognizable claim under the Second Amendment that would be independent of her excessive force claim." *Id.* at 6. In other words, "[i]t is entirely unclear exactly how [Mr. Rightsell's] Second Amendment rights were violated when he was shot by Trooper Organ." *Id.* Even so, Trooper Organ would be entitled to qualified immunity on that claim because "whatever right that is implicated under [the Estate's] invocation of the Second Amendment is not so clearly established as to be able to hold Trooper Organ liable for its violation." *Id.* (citing *Abbott v. Sangamon County., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013)).

In response, the Estate argues that the "'ancillary' constitutional claims should not be dismissed . . . simply because a Fourth Amendment seizure is among them and supplies the rubric by which to measure the appropriateness of the force used." ([Filing No. 92 at 6](#)–7.) Noting "that

5

the Fourth Amendment's 'reasonableness standard' is the correct metric by which excessive force claims should be measured," *id.* at 7–8 (citing *Graham*, 490 U.S. 386), the Estate contends, at the very least, that "Second Amendment violations [should not] be subsumed under a Fourth Amendment claim," *id.* at 8. As for the Fourteenth Amendment claim, the Estate argues that Defendants' cited cases do nothing "more than lay out the correct standard by which the excessive force/wrongful seizure/deliberate indifference claims should *eventually* be evaluated." *Id.*

In response to Defendants' claim of qualified immunity for Trooper Organ in regard to the Second Amendment claim, the Estate directs the Court to the text of both the U.S. and Indiana Constitutions. The Estate contends that "Mr. Rightsell's right to own and passive possess on his person a firearm was [ ] clearly established when [Trooper] Organ shot him in the face." *Id.* at 9 (citing U.S. Const. amend. II; Ind. Const. art. 1, § 32 ("The people shall have a right to bear arms, for the defense of themselves and the State.")).[1] The Estate argues, "[i]t would be remarkable if these excerpts from our Country's and State's founding documents were not considered sufficient to clearly establish Mr. Rightsell's right to possess a duly licensed firearm holstered at his waist on the side of a public road without government interference." *Id.*

In reply, Defendants maintain that the "ancillary Constitutional Claims are superfluous and warrant dismissal." (Filing No. 93 at 1.) Defendants argue that the Estate "concede[s] that [they] are correct," noting that the argument is one of "form over function." *Id.* at 2. Specifically, Defendants contend that "[c]ourts have held that where actions fall clearly within the ambit of those activities regulated by the Fourth Amendment, the Fourth Amendment provides the appropriate standard for evaluating the claim, and *there is no need for the district court to further*

---

[1] It is unclear to the Court how the Indiana Constitution's provision concerning the "right to bear arms" has any significance in clearly establishing that Mr. Rightsell had a right under the Second Amendment of the U.S. Constitution "to possess a duly licensed firearm holstered at his waist on the side of a public road without government interference." (Filing No. 92 at 9.)

6

*analyze the case* under the strictures of the Fourteenth Amendment." *Id.* (citing *Belcher v. Norton*, 497 F.3d 742, 754 (7th Cir. 2007)). As for the Second Amendment, Defendants argue the Estate fails to allege that any Defendant "prevented Rightsell from carrying a handgun" or that "Trooper Organ shot Rightsell as a result of the handgun." *Id.* at 3. In any event, Defendants argue the Estate has failed to meet its burden to rebut a claim of qualified immunity as it does not point to any binding precedent to exhibit that Trooper Organ should have known that his actions as it relates to Plaintiff's allegations were a violation of a clearly establish[ed] right. *Id.* at 4.

The Court agrees with Defendants on both constitutional claims. Regarding the Fourteenth Amendment, the Seventh Circuit has, consistent with Supreme Court precedent, made clear that "[c]laims that officers used excessive force in seizing a person are evaluated under the Fourth Amendment's reasonableness standard." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010); *Turner v. City of Champaign*, 979 F.3d 563, 567 (7th Cir. 2020) ("A claim for excessive force under § 1983 invokes the Fourth Amendment's protection against unreasonable seizures."); *Graham v. Connor*, 490 U.S. 386, 388 (1989) (holding that claims "that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [a] person . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard"). The Estate does not meaningfully differentiate the Fourteenth Amendment claim from the Fourth Amendment claim, and the former is subsumed by the latter. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quotations omitted). Any claim under the Fourteenth Amendment must be dismissed as duplicative. *See Kernats v. O'Sullivan*, 35 F.3d 1171, 1182 (7th Cir. 1994) ("The nature of the

7

allegations falls clearly within the ambit of those activities regulated by the Fourth Amendment . . . , and there was no need for the district court to further analyze the case under the strictures of the Fourteenth Amendment.").

As for the Second Amendment, the Estate advances a unique claim separate from excessive force: "Mr. Rightsell's right to own and passive possess on his person a firearm was [ ] clearly established when [Trooper] Organ shot him in the face." (Filing No. 92 at 9.) Though slightly opaque, the Court interprets this contention to mean that Trooper Organ deprived Mr. Rightsell of his right to carry a firearm on this particular occasion. But Seventh Circuit precedent is unsettled on that matter, shielding Defendants under qualified immunity. *See Wonsey v. City of Chicago*, 940 F.3d 394, 400 (7th Cir. 2019) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. For a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.") (quotations omitted). The Seventh Circuit instructs that, "subject to reasonable restrictions, the Second Amendment protects the right to carry a gun in public." *United States v. Leo*, 792 F.3d 742, 752 (7th Cir. 2015) (citing *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), *reh'g en banc denied*). Yet *Moore* invalidated a *general* statute prohibiting all citizens from carrying guns in public. 702 F.3d at 942. Here, however, the Estate alleges that in this specific instance Mr. Rightsell's Second Amendment rights were impinged (*see* Filing No. 64-1 at 5, 6 ("[Mr.] Rightsell had a properly permitted handgun holstered at his waist. When Rightsell looked up from the engine compartment of the Tahoe, Organ opened fire on Rightsell, firing six shots, hitting Rightsell in the lower lip. . . . [Mr.] Rightsell's properly permitted handgun remained holstered at his waist throughout this incident until he was handcuffed and disarmed by law enforcement officers at approximately 6:45 p.m.")). But in the Seventh Circuit,

it is an open question whether the Second Amendment encompasses the right to possess a firearm in *specific* circumstances:

> Whether and to what extent the Second Amendment protects an individual's right to possess a particular gun (and limits the power of the police to seize it absent probable cause to believe it was involved in a crime) is an issue that is just beginning to receive judicial attention. . . .
>
> This is not an issue that we have addressed and it is not one that we will address here. . . . [T]he reach and application of the Second Amendment in the law enforcement and community caretaking context . . . is a sensitive one, as it implicates not only the individual's right to possess a firearm, but the ability of the police to take appropriate action when they are confronted with a firearm that may or may not be lawfully possessed, and which, irrespective of the owner's right to possess the firearm, may pose a danger to the owner or others.

*Sutterfield v. City of Milwaukee*, 751 F.3d 542, 571–72 (7th Cir. 2014) (internal citations omitted), *cert. denied*. Considering *Sutterfield* is the Seventh Circuit's latest word on the matter, no existing precedent supports the Estate's contention that Mr. Rightsell had a Second Amendment right to possess the firearm at issue here. As this is clearly an unresolved question of law,[2] Defendants are entitled to qualified immunity because the right asserted by the Estate was not clearly established at the time of the alleged constitutional intrusion.

For these reasons, the Court **grants** Defendants' Motion to Dismiss as it relates to the claims arising under the Second and Fourteenth Amendments against all Defendants.

### 2. <u>Remaining Constitutional claims against Supt. Carter, Lt. McKee, and Sgt. Gritten</u>

The Estate also brings claims arising under the Fourth Amendment against Supt. Carter, Lt. McKee, and Sgt. Gritten (*see* Filing No. 64-1 at 7–14).[3] Defendants contend that these claims

---

[2] The Court acknowledges that the U.S. Supreme Court has recently granted certiorari in a case to answer "[w]hether the State's denial of petitioners' applications for concealed-carry licenses for self-defense violated the Second Amendment." *New York State Rifle v. Corlett*, No. 20-843, 2021 WL 1602643, at *1 (U.S. Apr. 26, 2021). But this case, like *Moore*, also involves a state's legislative ability to comprehensively limit an individual's right to carry a firearm outside the home.

[3] The Estate also brings a Fourth Amendment claim against Trooper Organ (*see* Filing No. 64-1 at 7). But, at least at this point in the litigation, Defendants do not challenge that claim.

should be dismissed because the Estate "has neither accurately alleged supervisor liability under 42 U.S.C. § 1983 and, moreover, these defendants are entitled to qualified immunity for their involvement." (Filing No. 89 at 7.) First, the Estate "asserts a 'customs, practices, and policies' claim against [Supt.] Carter, as the Superintendent of the Indiana State Police." *Id.* This represents "an impermissible *Monell* claim," which can only be asserted against a "municipality." *Id.* at 8 (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978)). The claim, then, must fail since "[Supt.] Carter, himself, is not a municipality." *Id.* As for Lt. McKee and Sgt. Gritten, Defendants argue that "certain citizen complaints against Trooper Organ" of which these Defendants were aware merely "imply unprofessional and unconstitutional conduct," and they had no knowledge of any "allegations of excessive force." *Id.* at 8–9. The Estate "is not entitled to the logical leap that citizen complaints of manipulative behavior should be enough to place [Lt.] McKee and [Sgt.] Gritten on notice that Trooper Organ would allegedly walk up to a man leaning into the hood of a vehicle and shoot him." *Id.* at 9. Finally, Defendants maintain that they "are entitled to qualified immunity" because the Estate can neither "say that it was clearly established at the time [Mr.] Rightsell was shot that [Supt.] Carter's actions, whatever they were, violated Rightsell's rights" nor "say that [Sgt.] Gritten and [Lt.] McKee's involvement violated Rightsell's rights." *Id.*

The Estate responds that Defendants "resurrect[] arguments" that should "be rejected—yet again." (Filing No. 92 at 10.)[4] Consistent with Seventh Circuit precedent, the Estate maintains, the Second Amended Complaint sufficiently alleges that "[Trooper] Organ's supervisors acted with deliberate indifference, and their deliberate indifference caused [Mr.] Rightsell to have his

---

[4] In its order granting the Estate's motion for leave to file a Second Amended Complaint (and mooting the prior motion to dismiss), the Court instructed that "[t]o the extent that [the Estate] continues to advance claims discussed in that now-obsolete Motion, the Court will consider those and any additional arguments in any subsequently filed Motion to Dismiss." (Filing No. 69 at 5.) The Court will fulfill this pledge.

constitutional rights violated." *Id.* at 11 (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Because supervisors knew that "[Trooper] Organ routinely and unjustifiably pointed his weapon at citizens, unjustifiably detained citizens, and regularly approached vehicles with his weapon drawn during routine traffic stops," the claims should not be dismissed. *Id.* at 12. As for qualified immunity, "[Trooper] Organ unjustifiably shooting [Mr.] Rightsell in the face was clearly 'plainly excessive' and any objective police officer would have been on notice that they were violating [Mr.] Rightsell's constitutional rights." *Id.* at 13 (citing *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013)).

In their reply, Defendants "address Plaintiff's claims against [Supt.] Carter, [Lt.] McKee, and [Sgt.] Gritten for what they truly are—impermissible *Monell* and *respondeat superior* claims under § 1983." ([Filing No. 93 at 4](#).) Notably, Defendants argue, the Estate "has not alleged that they had any involvement in the shooting of [Mr.] Rightsell." *Id.* Absent personal involvement, the claims must fail when the Estate has also failed to allege "that the shooting happened at the direction or consent of [Supt.] Carter, [Lt.] McKee, or [Sgt.] Gritten nor has she shown that they were aware of this incident." *Id.* at 5. Defendants reiterate that claims against Supt. Carter must fail when the allegations against him represent impermissible *Monell* claims that "are based upon the customs and policies of the Indiana State Police." *Id.* As for deliberate indifference, the Second Amended Complaint "fails to assert how these Defendants knew about Trooper Organ's conduct, [facilitated] it, approved it, condoned it, or turned a blind eye to it," especially when no prior complaints against Trooper Organ involved excessive force. *Id.* at 5–6. Finally, regarding qualified immunity, Defendants argue that the Estate "has not pointed to any closely analogous cases clearly establishing the constitutional rights she accuses Defendants of violating." *Id.* at 7. Instead of

11

discussing the conduct of Supt. Carter, Lt. McKee, and Sgt. Gritten, Defendants point out that the Estate's "argument focuses solely on the actions of Trooper Organ." *Id.*

The Court (mostly) agrees with Defendants. First, the Estate's allegations against Supt. Carter represent improper *Monell* claims. These allegations merely assert that the "customs, practices, and policies" implemented by Supt. Carter led to the deprivation of Mr. Rightsell's constitutional rights ([Filing No. 64-1 at 8](); *Monell*, 436 U.S. at 694 (holding that a local government is responsible under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury")). They do not, in Defendants' words, contend that Supt. Carter "had any involvement whatsoever in the shooting of [Mr.] Rightsell" ([Filing No. 89 at 8]()). Nor does the Estate contend that Supt. Carter was "on notice that Trooper Daniel Organ engaged in a pattern of violating citizens' constitutional rights." (*See* [Filing No. 64-1 at 10]() (alleging awareness of Lt. McKee and Sgt. Gritten of citizen complaints).) Under *Monell*, the constitutional claims against Supt. Carter must be dismissed because (1) he is an official in a *state* agency, *see Wetzel v. Sheahan*, 210 F.3d 377 (7th Cir. 2000) (holding that because a plaintiff "failed to allege that his injuries stem from *county* policy or custom, he has failed to establish municipal liability" under *Monell*) (citations omitted) (emphasis added), and (2) he is being sued in his individual capacity, *see Sandefur v. Dart*, 979 F.3d 1145, 1156 (7th Cir. 2020) (instructing that an "*entity* itself may be found liable only where a constitutional violation was caused by an unconstitutional policy, custom, or practice under *Monell*") (emphasis added). *See generally Katz-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016) ("The complaint alleges lots of *individual* misconduct by county officials, but it nowhere identifies any county policy or custom that caused Katz-Crank's injury.").

As for Lt. McKee and Sgt. Gritten, the Court finds that the allegation that they "were on notice that Trooper Daniel Organ engaged in a pattern of violating citizens' constitutional rights" sufficiently pleads that these Defendants "kn[e]w about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *Chavez*, 251 F.3d at 651 (quotation omitted). Defendants contend that the alleged citizen complaints differ too greatly from the incident involving Mr. Rightsell to suffice as adequate notice (*see* Filing No. 89 at 9 (maintaining that, "[a]t best, . . . alleged citizen complaints suggest manipulative behavior"); Filing No. 93 at 5–6 (arguing that no prior complaints against Trooper Organ involved excessive force)). However, known complaints involving an officer who repeatedly approached vehicles with his gun drawn in ordinary circumstances shows that the supervisors "knew about . . . the specific conduct" that led to the shooting of Mr. Rightsell. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Qualified immunity, however, bars the claims from advancing: the Estate has not explained how Lt. McKee and Sgt. Gritten's conduct was unconstitutional. Instead, the Estate concentrates on the conduct of *Trooper Organ*, directing arguments at the actions of the incorrect defendant for purposes of this motion. In other words, as stated by Defendants, The Estate's "argument focuses solely on the actions of Trooper Organ without any comment as to how . . . [Lt.] McKee and [Sgt.] Gritten were involved in the incident" or how their "actions or conduct is unconstitutional or that the alleged violation is so obvious that a reasonable state actor would know that his actions violated the Constitution." (Filing No. 93 at 7.) Moreover, the Estate has not pointed to any analogous cases. Because the Estate has failed to rebut Defendants' qualified immunity argument, and the Court "will not invent legal arguments" for The Estate, *Cty. of McHenry v. Ins. Co. of the W.*, 438

F.3d 813, 818 (7th Cir. 2006) (quotation omitted), the Fourth Amendment claims against Lt. McKee and Sgt. Gritten must also be dismissed.

For the preceding reasons, the Court **grants** Defendants' Partial Motion as it pertains to Fourth Amendment claims against Supt. Carter, Lt. McKee, and Sgt. Gritten.

**B.     Negligence Claim**

The Estate also asserts a claim of negligence against the Defendants ([Filing No. 64-1 at 16](#)). Defendants, argue that they are "entitled to Tort Claim Immunity," as "Indiana Code § 34-13-3-5(b) states, 'a lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally.'" ([Filing No. 89 at 10](#).) Here, Defendants maintain, that the Estate "has specifically alleged that at all times Trooper Organ was acting within the scope of his employment" and "that [Supt.] Carter, [Lt.] McKee, and [Sgt.] Gritten were so similarly situated." *Id.* at 11. Moreover, the actions (or inactions) of Defendants "fit within the 'conduct of the same general nature as that authorized, or incidental to the conduct authorized.'" *Id.* (citing *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000)).

The Estate responds that "immunity is not available to the Defendants for the state law claim because the [Second Amended Complaint ] alleges the Defendants acted with willful and wanton [conduct] and malice." ([Filing No. 92 at 14](#) (citing Ind. Code § 34-13-3-5(c)).) The Estate cedes that government employees are "generally immune from personal liability for acts committed within the course and scope of their employment" and that the Second Amended Complaint "does not specifically use the words 'willful and wanton' or 'malicious.'" *Id.* at 15–16. Even so, The Estate "requests this Court recognize the liberal pleading standards" and maintains that the Second Amended Complaint sufficiently alleges that (1) "Defendants showed a disregard

14

for the safety of innocent citizens with whom [Trooper] Organ interacted" (willful and wanton conduct) and (2) Troper Organ "intentionally and unjustifiably pointed his firearm at innocent civilians on several occasions" and "engaged in several acts with the intention of inflicting fear upon innocent civilians," all of which his supervisors were also aware (malicious acts). *Id.* at 16–17.

In their reply, Defendants argue the Estate's claims are barred by its "own doing" because she specifically alleged in her Second Amended Complaint that Trooper Organ and his supervisors "w[ere] acting within the scope of [their] employment." ([Filing No. 93 at 8](#).) Moreover, Indiana Code § 34-13-3-5(c) requires a plaintiff to "allege" that defendants were "willful and wanton" or "malicious" in their conduct, which the Estate clearly has not done. *Id.* Because the negligence allegation is merely an "add on" claim used to support other claims, the Defendants ask that the Court dismiss it. *Id.* at 8–9.

The Court again agrees with Defendants. "The ITCA limits when a plaintiff may sue a governmental employee personally." *Wilson v. Isaacs*, 917 N.E.2d 1251, 1257 (Ind. Ct. App. 2009) (citing *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003)), *summarily aff'd in part*. If a plaintiff alleges that employees were acting within the scope of their employment—as the Estate does in the Second Amended Complaint about all the Defendants—the plaintiff is barred from bringing a state law tort claim against the employees personally. *See* Ind. Code §§ 34-13-3-5(b), (c)(2); *see also Townsend v. Wilson*, No. 1:13-cv-315, 2014 WL 293808, at *1 (N.D. Ind. Jan. 27, 2014) (holding that "Plaintiff's attempt to advance state law tort claims against the individual Defendant officers is futile" when complaint alleged they were acting within the scope of their employment); *Ocasio v. Turner*, 19 F. Supp. 3d 841, 860 (N.D. Ind. 2014) (dismissing claim under Indiana Code § 34-13-3-5(b) when complaint alleged "that [Senior Trooper] is sued in his

individual capacity and allege[d] that [Senior Trooper] was acting within the scope of his employment at all times relevant to the allegations of the Complaint").

In other words, "to bring a claim against [a governmental employee] individually for acting 'clearly outside the scope of [his] employment,' [a plaintiff is] required to make *that specific allegation* in her complaint and then supply facts supporting that allegation in her complaint." *Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1115 (Ind. Ct. App. 2001) (quoting Ind. Code § 34-13-3-5(b)) (emphasis added). And if "a plaintiff *fails to comply with the pleading requirement* of Indiana Code § 34-13-3-5(c) . . . , the claim against the employee is barred." *Feldhake v. Buss*, 36 N.E.3d 1089, 1093 (Ind. Ct. App. 2015) (emphasis added). Because the Estate has failed to meet this strict pleading standard and, in fact, has alleged the opposite (*see* Filing No. 64-1 at 2, 4, 8 (alleging that Defendants were "acting within the scope of [their] employment")), the Court must **grant** the Motion to Dismiss as the state law negligence claims against these Defendants.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** the State Defendants' Partial Motion to Dismiss (Filing No. 88). The Estate's Fourth Amendment claim against Trooper Organ remains; all other claims are **dismissed**. Additionally, the Clerk is **directed** to terminate all Defendants but Trooper Organ and correct the docket to accurately represent that the single Plaintiff in this case is "GLORIA RIGHTSELL, as the Personal Representative of the ESTATE OF GLENN RIGHTSELL, Deceased" (*see* Filing No. 64-1 at 1) and the remaining Defendant is "DANIEL ORGAN, Trooper, in his Individual Capacity" (*see* Filing No. 64-1 at 1; Filing No. 85; Filing No. 86).

**SO ORDERED.**

Date: 6/30/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Michael J. Blinn
INDIANA ATTORNEY GENERAL
michael.blinn@atg.in.gov

Darren Craig Chadd
TAYLOR, CHADD, MINNETTE,
SCHNEIDER & CLUTTER, P.C.
dchadd@tcmsclaw.com

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov

D. Bruce Kehoe
WILSON KEHOE & WININGHAM
kehoe@wkw.com

J. Kent Minnette
TAYLOR, CHADD, MINNETTE,
SCHNEIDER & CLUTTER, P.C.
kminnette@tcmsclaw.com

Tyler M. Nichols
KIRTLEY, TAYLOR, SIMS, CHADD &
MINNETTE, PC (Crawfordsville)
tnichols@tcmsclaw.com

Liberty L. Roberts
CHURCH HITTLE & ANTRIM
(Noblesville)
lroberts@cchalaw.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Christopher G. Stevenson
WILSON KEHOE & WININGHAM
cstevenson@wkw.com

Daniel Lyn Taylor
TAYLOR CHADD MINNETTE
SCHEIDER & CLUTTER PC
dtaylor@tcmsclaw.com